UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Antwaun Tucker

v. Case No. 22-cv-525-SM-AJ

Cheshire County Jail, et al.

O R D E R

Plaintiff Antwaun Tucker, representing himself, brought suit against the Cheshire County House of Corrections ("CCHC") and officers at the jail after his leg was broken during an altercation between inmates and guards. The magistrate judge recommends that defendants' motion for summary judgment be granted as to all claims except the excessive force and negligence claims against defendant Master Sgt. McDonald. Defendants object to the report and recommendation to the extent it recommends denying the motion for summary judgment on the excessive force claim against McDonald.[1]

## Standard of Review

A party may object to a magistrate judge's proposed findings and recommendations in a referred matter. 28 U.S.C. 636(b)(1). The court will then conduct a de novo review of

[1] Defendants do not object to that part of the magistrate judge's report and recommendation that recommends not granting summary judgment on the negligence claim against McDonald. Based on the standard under 28 U.S.C. § 636(b)(1), that part of the report and recommendation is not subject to review.

those parts of the report and recommendation to which objection has been made. Id. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

Summary judgment is appropriate when, based upon the record presented for purposes of the motion, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine "if the evidence would enable a reasonable factfinder to decide the issue in favor of either party." Alicea v. Cincinnati Inc., 166 F.4th 245, 253 (1st Cir. 2026) (internal quotation marks omitted). "Facts are material if they might affect the outcome of the suit under the governing law." Arocho-Rodriguez v. Concepcion, 177 F.4th 39, 43 (1st Cir. 2026) (internal quotation marks omitted).

## Background[2]

### A. Factual Background

Tucker was a pretrial detainee at the CCHC in March of 2022 when the incident at issue in this case occurred. After Tucker

[2] The court need not repeat all the facts pertinent to the incident, which are presented in the magistrate judge's report and recommendation. Doc. no. 56. Instead, the background facts are summarized from the report and recommendation, noting where defendants dispute certain matters.

and other inmates were transferred to a different jail block, they noticed that some of their personal property was missing. Tucker joined other inmates asking to talk to the captain about the missing items.

Officers called for the inmates to lock into their cells for headcount, which occurred at approximately that time each day. Tucker and others heard the order but did not comply. An officer then called for backup, and twenty officers responded. The events that followed were recorded on video cameras in the jail.

Tucker and other inmates gathered at the top of the central stairs while officers gathered at the bottom. One of the inmates attempted to explain the inmates' complaints about their missing property. One inmate held a mop handle that was passed to another inmate and then put down. Other inmates moved around the area. Officers began to come up the central stairs slowly.

Ten officers then quickly went up the side stairs and herded inmates, including Tucker, to the central stairs. Other officers came up the central stairs. Officers pointed tasers at the inmates and ordered them to get on the ground or go to their cells and lock in. Tucker and two others did not comply.

An officer sprayed Tucker with OC spray. An officer grabbed Tucker, but he pulled away. An officer pushed an inmate who fell against Tucker's leg, and at the same time another

officer shot Tucker with his taser. Tucker immediately fell down on his back.

Two officers kneeled next to Tucker, rolled him over to his stomach, and put him in handcuffs. Tucker was not resisting while he was on the floor or during the handcuffing procedure. While handcuffing was in progress, McDonald moved to the area of Tucker's legs, crossed his ankles and pushed his legs up toward his back.[3] Tucker contends McDonald used his full weight to press his legs back, while McDonald contends he used pressure but not his full weight. Tucker contends that he felt a sharp pain when McDonald forced his legs toward his back.

After the handcuffs were secure, McDonald let go of Tucker's legs. The other two officers helped Tucker to a seated position. When the officers then helped Tucker to stand, it was apparent that his right leg was injured. A nurse at the jail examined Tucker's leg, and he was taken to Cheshire Medical Center where it was determined Tucker's right leg was broken. The next day, Tucker was transported to a different jail.

B. Procedural Background

Proceeding pro se, Tucker brought federal and state claims against Cheshire County and jail officers. Doc. no. 21

[3] McDonald emphasizes that Tucker was not yet handcuffed when he began the leg restraint.

(amended complaint). Defendants moved for summary judgment. Doc. no. 45. Tucker's claims are as follows:

> Count I – alleging a Fourteenth Amendment excessive force claim pursuant to 42 U.S.C. § 1983 against Major Erwin for his use of OC spray against Tucker;
>
> Count II - alleging a Fourteenth Amendment excessive force claim under § 1983 and a state law claim for assault and battery against Correctional Officer Tocci for tasing Tucker;
>
> Count III – alleging a Fourteenth Amendment excessive force claims and state law tort claims for negligence, against Command Sergeant Major Brown and Correctional Officer Beyer for forcibly holding Tucker down on his stomach after he said he could not breathe, and against Master Sgt. McDonald for crossing Tucker's ankles, then pushing Mr. Tucker's feet toward his buttocks, and applying significant weight on top of his crossed legs, causing Mr. Tucker's leg to break.

Doc. no. 21, at 14-17.

The motion for summary judgment was referred to the magistrate judge for a report and recommendation. The magistrate recommends that the court grant summary judgment in favor of Brown and Beyer and dismiss defendants Cheshire County, Major Erwin, CO Tocci, CSM Brown, and CO Beyer from the case.

Id., at 32. The magistrate judge also recommends that the court deny summary judgment as to Tucker's excessive force and negligence claims against McDonald. Defendants object to that part of the recommendation to deny summary judgment on the excessive force claim in Count III against McDonald.[4]

## Discussion

In support of the objection, defendants argue that the undisputed facts show that McDonald did not use excessive force on Tucker when he bent Tucker's legs backward over his back. They contend that because Tucker was in the process of being handcuffed, he was not restrained and the force used by McDonald was appropriate. They also contend that the force used was too minimal to be actionable.

### A. Excessive Force

To prove an actionable excessive force claim, a pretrial detainee must demonstrate that the force purposefully or knowingly used against him was objectively unreasonable. Kingsley v. Hendrickson, 576 U.S. 389. 396-97 (2015).

[4] Tucker has not filed an objection to the report and recommendation. Under Federal Rule of Civil Procedure 6(d), Tucker would arguably have until the end of the week to file an objection. If an objection is received by the court within that time, the court will consider whether it would change the outcome in this order.

"[O]bjective reasonableness turns on 'the facts and circumstances of each particular case.'" Id., at 397 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. Stated in other terms, an officer uses excessive force, despite his intent, when his "action was 'not rationally related to a legitimate governmental objective or [] it was excessive in relation to that purpose.'" Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 71 (1st Cir. 2016) (quoting Kinsley, 576 U.S. at 398)).

In this case, the need for additional force and the use of additional force could be found by a jury to have been excessive. It is undisputed that although Tucker had previously failed to obey orders and resisted restraint by the guards, by the time McDonald arrived, Tucker had been OC sprayed, had been tased, and was passively face down on the floor in the process of being handcuffed. He was not actively resisting in any respect. McDonald does not dispute those circumstances. Nevertheless, McDonald immediately crossed Tucker's ankles and

forced his legs upward over his back, despite the absence of any resistance by Tucker.

The parties dispute how much force McDonald used in that process, but there is no dispute that some force was necessary to accomplish that posture.[5] McDonald's argument, that because Tucker was not yet handcuffed his own use of force was reasonable, misses the mark. Tucker was not kicking, moving his legs, or in any way resisting the handcuffing process. Because Tucker was not apparently resisting, a jury could find that there was no need for the leg hold that McDonald administered to Tucker, which may have broken his leg.

The parties dispute the amount of force McDonald used and the extent of any related injury. Tucker contends, based on his own recollection of his sensation and pain when McDonnald forced his crossed legs over his back, that McDonald broke his right leg by putting his body weight on Tucker's legs. McDonald contends, based on the opinion of the defendants' expert witness, that Tucker's leg was broken before he administered the leg hold, when the other pushed inmate fell into Tucker.[6] Given

---

[5] McDonald's analogy to a mere push or shove, citing Graham, 490 U.S. at 396-397, is not persuasive.

[6] Defendants submitted the opinion of Andrew J. Schoenfeld, MD, MSc, an orthopedic surgeon, that the collision with the other inmate broke Tucker's leg. Doc. no. 45-22, at 3. Dr. Schoenfeld's opinion creates a disputed fact about the cause of the broken leg, in opposition to Tucker's recollection of the incident, but does not resolve the factual issue.

that dispute, and taking the facts in the light most favorable to the nonmoving party, Tucker, that factor does not support summary judgment.[7]

In light of the disputed facts about the circumstances surrounding McDonald's actions, he is not entitled to summary judgment on the excessive force claim.

### B. Qualified Immunity

Alternatively, McDonald contends that he is entitled to qualified immunity because handcuffing was in progress but not complete when he applied the leg restraint and because of the minimal force used. "Qualified immunity protects government officials 'when [they] make a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [they] confronted.'" Conlon v. Scaltreto, 158 F.4th 211, 219 (1st Cir. 2025) (quoting Taylor v. Riojas, 592 U.S. 7, 8 (2020)). Qualified immunity applies when an officer violates the law unless "the unlawfulness of the officer's conduct was clearly established at the time of the alleged misconduct." Id. (internal quotation marks omitted).

---

[7] McDonald's references to his training do not absolve him from liability for using excessive force. Among other issues, as the magistrate judge noted, defendants did not provide evidence of the relevant training. See Doc. no. 56, at 27 n.16.

"[I]f officers of reasonable competence could disagree on the lawfulness of the action, defendants are entitled to immunity." Velez v. Eutzy, 152 F.4th 292, 303 (1st Cir. 2025) (internal quotation marks omitted).

It was clearly established before this incident in March of 2022, that prison guards cannot use excessive force on nonresisting pretrial detainees. Kingsley, 576 U.S. at 397. This record shows that it is undisputed that Tucker had been tased, was on his stomach on the floor, and was not resisting the handcuffing process, or resisting in any other obvious way, when McDonald applied the leg restraint hold. For that reason, it is at best disputed whether there was any need for the additional force McDonald brought bear, and whether it was unreasonable. Further, it is disputed how much force McDonald used and what injury was caused by the force applied. Again, it is disputed whether the force used was unreasonable under the circumstances.

McDonald has not shown that he is entitled to summary judgment based on qualified immunity.

C. Cheshire County and Douglas Iosue

Tucker named Cheshire County and Superintendent Douglas Iosue as defendants in the Third Amended Complaint, but he did not include a single factual allegation against either of them

in the amended complaint. Doc. no. 21. Tucker also did not name them in any of the three counts. In the motion for summary judgment, defendants assumed that Tucker intended to bring vicarious liability claims against Cheshire County and Superintendent Iosue and municipal liability claims against Cheshire County.

Defendants argued that summary judgment was appropriate on any claims against Cheshire County and Superintendent Iosue because vicarious liability does not exist for claims under 42 U.S.C. § 1983 and because Tucker had not alleged facts to support municipal liability, supervisor liability, or vicarious liability. Doc. no. 45-1, at 28-29. In the report and recommendation, the magistrate judge assumed that Tucker intended to include Cheshire County only in Count II, brought against Tocci, based on a theory of vicarious liability for the assault and battery claim.[8] The report and recommendation, however, does not address the status of Superintendent Iosue, who is named in the caption of the Third Amended complaint.

Based on a review of the filings, Tucker does not allege any facts to support a claim against either Cheshire County or Superintendent Iosue. See City of Canton v. Harris, 489 U.S.

[8] The report and recommendation mistakenly states that the county was not listed as a defendant in the Third Amended Complaint. Doc. no. 56, at 22 n.14.

378, 385 (1989) (no vicarious liability in § 1983 cases); Baez v. Town of Brookline, Massachusetts, 44 F.4th 79, 82 (1st Cir. 2022) (municipal liability under § 1983 requires proof that "plaintiff suffered a violation of a constitutional right as a result of [the municipality's] 'policy or custom'"); Parker v. Landry, 935 F.3d 9, 14 (1st Cir. 2019) (supervisory liability under § 1983 requires proof of "an affirmative link between the abridgement [of a constitutional right] and some action or inaction on the supervisors part" (internal quotation marks omitted)); Trahan-Laroche v. Lockheed Sanders, Inc., 139 N.H. 483, 485-86 (1995) (vicarious liability under New Hampshire law). It is also unclear that Tucker intended to bring such claims. Defendants are entitled to summary judgment on any claim that may have been alleged against Cheshire County and Superintendent Iosue.

## Conclusion

For these reasons, the report and recommendation (doc. no. 56) is approved. Defendants' motion for summary judgment (doc. no. 45) is granted on all counts except that part of Count III in which plaintiff alleges excessive force and negligence claims against Master Sgt. McDonald. Defendants Cheshire County, Superintendent Iosue, Major Erwin, CO Tocci, CSM Brown, and CO Beyer are granted summary judgment in their favor and are

dismissed from this action. The remaining claims in the case are that part of Count III that alleges excessive force and negligence claims against Master Sgt. McDonald.

SO ORDERED.

Steven J. McAuliffe
United States District Judge

September 30, 2026

cc: Antwuan Tucker, pro se
Counsel of Record